UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ - Civ

**Amir A Kammona** ,
Plaintiff

vs.

**Onteco Corporation,**
and

**Dror Svorai,**
and

**Haim Mayan,**
and

**Jorge Schcolnik,**
and

**Action Stock Transfer Corporation,**
Defendant(s).

FILED by ___ D.C.
JAN 17 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA – MIAMI

# COMPLAINT

## PARTIES:

1. Plaintiff ,**Amir A Kammona**,is a resident of  Loudon County  in

Tennessee

Address:**170 Hillsborough Lane,**

**Lenoir City,TN 37772**

Email:**FRDPVL@YAHOO.COM**

Phone:**(865)271-1676**

**2.** Defendant,**Onteco Corporation,**is a corporation incorporated under the laws of Nevada and is doing business in the Miami-Dade county in Florida where it is located.

Address:**19495 Biscayne Blvd.**

**Suite 411**

**Aventura, Florida 33180**

Phone**:(305) 932-9795**

**3.** Defendant,**Dror Svorai,**was the President/Chief Executive Officer, Secretary, Treasurer/Chief Financial Officer and the sole director of **Defendant** Onteco Corporation.

Address:**19495 Biscayne Blvd.**

**Suite 411**

**Aventura, Florida 33180**

**4.** Defendant,**Haim Mayan,**was a director and the interim Chief Executive Officer,Chief Financial Officer who directly preceded Defendant,Dror Svorai.

Address:**12000 North Bayshore Drive**

**Suite 305**

**North Miami,Florida 33181**

**5.**Defendant,**Jorge Schcolnik,**became a Director,President and Secretary on **8/31/2012.**

(Note: Dates following the format mentioned in point#**5** above,throughout

this complaint,always follow the order of *month/day/year*)

Address:**19495 Biscayne Blvd.**

  **Suite 411**

  **Aventura, Florida 33180**

**6. Defendant,Action Stock Transfer Corporation,**is the transfer agent of Defendant **Onteco Corporation.**

Address:**7069 Highland Drive**

  **Suite 300**

  **Salt Lake City, Utah 64121**

## JURISDICTION

**5.** The court has jurisdiction pursuant to section 10(b) of the Securities Exchange Act of 1934 (codified at 15 USC § 78j(b)) and The Securities And Exchange Commission's Rule 10b-5 (codified at 17 C.F.R. 240. 10b-5).

**6.** The court also has a Diversity of Citizenship jurisdiction based on the diverse citizenship of the Plaintiff and the Defendants as shown in the Parties section above and the value of the requested relief at the end of this complaint.

## VENUE

**7.** The court is an appropriate venue for the complaint based on where the main Defendant (Onteco Corporation) is located.

## STATEMENT OF THE CLAIM

**8.** Defendant Onteco Corporation is a public company trading on over the counter market under the ticker ONTC.

**9.** NexPhase Lighting is a wholly owned subsidiary of Defendant Onteco Corporation and has patent pending intellectual property estimated at over $17 million according to a Defendant's Onteco Corporation filing with the SEC.

**10.** Defendant Onteco Corporation acquired its subsidiary NexPhase Lighting,a private corporation organized under the laws of Florida, on

February 14, 2011 for 67,500,000 shares of its restricted common stock according to the Defendant's filings with the SEC.

**11.** The Plaintiff has been a shareholder in Defendant Onteco Corporation since 5/16/2011 when the Plaintiff acquired his first shares in the open market.

**12.** All the shares held by the Plaintiff are common stock shares.

**13.** All the SEC (Securities And Exchange Commission) filings mentioned here can be accessed through the SEC web site.

**14.** The Plaintiff acquired all his shares in the open market.

**15.** From about the end of September 2011 the Plaintiff started a concentrated effort to add shares to his position in the open market.

**16.** The Plaintiff started filling SEC Schedule 13D on 10/19/2011 after becoming the owner of 18,197,843 shares which represented 7.2 percent of the total outstanding common stock shares.

**17.** The Plaintiff amended SEC Schedule 13D on 10/27/2011 after increasing his ownership to 25,097,843 (equivalent to 9.9 percent) of the outstanding common shares.

**18.** On 11/2/2011 the Plaintiff filed SEC Form 3 after taking his ownership to 27,109,502 (equivalent to over 10.71 percent) which made the SEC term "Insider" apply on the Plaintiff according to SEC definition.

**19.** On that same date, about two hours later, Defendant Onteco Corporation issued a press release and filed a SEC form 8-k that announced compensating Defendant Dror Svorai, who was the CEO and CFO of Defendant Onteco Corporation, with 70 million common Stock shares. The shares were issued at 0.001 per share (which is the par value of the common stock).

**20.** The Common Stock compensation mentioned in point#**19** above is only less than two percent of the entire position held by Defendant Dror Svorai (71,418,810 share) before the date of that announcement.

**21.** In addition, the 8-k filed by Defendant Onteco Corporation on 11/2/2011 also announced compensating Defendant Dror Svorai with the equivalent of 1.5 billion common stock voting power through 150,000 shares of a newly

4

created Preferred Shares class that was announced also in the same 8-k filing.These preferred shares were also issued at 0.001 per share.

**22.** The most recently reported outstanding number of Common Stock shares before compensation announcement mentioned in point#**21** above was 253,058,765 (about 253 million).These shares also represented all the outstanding voting power.There were no preferred shares class of shares or any other different class of shares.

**23.** The "board of directors" which according to the announcement mentioned in point#**21** made the decision to award these compensations, is actually comprised of one person only and that person is Defendant Dror Svorai himself.

**24.** After filing SEC Form 3 on 11/2/2011 the Plaintiff kept filing for his purchases on SEC Form 4 as required by the regulations.

**25.** The Plaintiff continued to buy shares in the open market increasing his ownership percentage and filed SEC Form 4 showing increasing his ownership to 38775377, 43307613 shares on 11/4/2011, 11/8/2011 respectively.

**26.** On 11/16/2011 Defendant Onteco Corporation announced filing for an increase in the authorized shares from 750 million to 2 billions which is by far the biggest increase.It went from 75 million to 350 million to 750 million to this 2 billions.

**27.** None of the previous increases in authorized shares were announced in a separate 8-k filing as the one mentioned in point#**26** above.

**28.** The Plaintiff continued to buy shares in the open market increasing his ownership percentage rapidly and on 11/17/2011 the Plaintiff filed SEC Form 4 showing an ownership of 53,806,764 shares (which was later corrected to 54,806,763).

**29.** A little later on that same date of 11/17/2011,the company filed its quarterly report for the quarter ending 09/30/2012("Q3 Report").

**30.** In Q3 Report there was a sudden change or addition in the description of the "Related Parties",to which the majority convertible notes belong,from "Related Parties" to "Non-affiliated Related Parties".

**31.** The Q3 Report claimed that 229,201,897 shares were issued to 28

investors as a result of conversions of some convertible Notes.Most of these converted shares,however,actually came from notes that were originally issued to "an investment firm" as described in the "Notes Payable - Related Parties" section of previous reports (The section that came with the additional title of "Notes Payable - Non-affiliated Related Parties" in Q3 Report).

**32.** Despite the conversion of shares mentioned in point#31 above,the total Notes Payable amount actually increased through the issuance of more cheap convertible notes.

**33.** This time,in the Q3 Report, the conversion price mentioned for some newly signed notes was taken down from 1/5 cent to the par value of 1/10 cent and even lower.

**34.**The Q3 Report also included two convertible notes that allowed for conversion below the par value of the common stock if market prices (after 75 percent discount) allow that.

**35.** The Plaintiff continued to buy shares in the open market and reporting the increase in his holding through the SEC Form 4 and SEC Schedule 13D he kept filing.The Plaintiff filed forms 4 showing increasing his ownership to:           56806761, 58806759, 65976043, 89656053, 94279410, 97079410,  98009410, 107295236, 124532580, 140215399, 150028954, 157514327,  176135420,  189735420,  197828420      on  1/21/2011, 11/23/2011, 11/28/2011, 11/30/2011, 12/1/2011, 12/7/2011 12/8/2011, 12/12/2011, 12/27/2011, 12/28/2011, 12/30/2011, 1/3/2012, 1/5/2012, 1/12/2012, 1/13/2012 respectively.

**36.** On 1/17/2012  Defendant Onteco Corporation filed form 8-k with the SEC indicating starting a process of a 1 to 1000 reverse split (each 1000 share to be combined into one new share).

**37.** Despite the reverse split mentioned in point#36 above the par value of the common stock was not multiplied by 1000 to represent the par values of all the shares grouped together to make each new share.Instead,the par value of the new shares was kept the same as that of the original shares at $0.001.

**38.** In that same 8-k filing of 1/17/2012  the Defendant Onteco Corporation also showed a change in the number of issued and outstanding stock from 373,014,903 "Outstanding as of  November 14, 2011",as mentioned in the quarterly report filed on 11/17/2011, to 745,634,893 (equivalent to 745,635

post-reverse split shares) as mentioned in that 8-k filing.The outstanding number of common stock shares was just a little short of being doubled within less than two months.

**39.** Despite the claim in that same 8-k filing of 1/17/2012 that the 1 to 1000 reverse split decision was made on 11/2/11,there was no mentioning of such thing or even any kind of reverse split in their SEC filings before that filing of 1/17/2012.

**40.** Although the filing of 1/17/2012 included this statement "Certain factors were discussed among the members of the Board of Directors..",as mentioned in point#23 above,the board of directors was comprised of only one person,Defendant Dror Svorai (the CEO) himself only.

**41.** On 1/31/2012 Defendant Onteco Corporation made a form 8-k filing announcing the decision of its board of directors to compensate Defendant Dror Svorai and another executive with 30 million and 20 million shares respectively.

**42.** The Plaintiff continued to buy shares in the open market and filed SEC Form 4 showing an ownership (pre-reverse split counting) of 287552420, 12967000, 321445420, 427781420 on 2/6/2012, 2/7/2012, 2/13/2012, 2/17/2012, respectively

**43.** There isn't any other known type of shares other than restricted shares making the increase in outstanding shares.Nevertheless,despite the holding period requirement of SEC Rule 144 for restricted shares,the Plaintiff alone was able to buy shares in the open market beyond what should be available according to that rule.The Plaintiff was able to exceed the 373,014,903 shares reported by the company as outstanding as of November 14, 2011 in its third quarter report ( point#38 ) within 96 days from that date.As mentioned in point#42 above,on 2/17/2012,the Plaintiff filed a SEC Form 4 showing an ownership of 427,781,420 shares (pre-reverse split counting)all bought in the open market.

**44.** Despite the fact that the Plaintiff alone bought in the market more than what is allowed to be sold according to Rule 144 and that the Plaintiff was not trading any of those shares (except for 1000 pre-reverse split,or one post reverse split,the plaintiff once sold ) reverse ,not only there was still trading" volume there but there was a very disproportionately big volume that even reached numbers like 900 thousand (900 million pre-reverse split

counting) on 02/15/2012.

**45.** The increased in the volume accompanied the price per share going lower and lower to close at less than 5 cents a share on 03/02/2012.

**46.** After a pose that lasted about 20 days the Plaintiff continued to buy shares in the open market and filed for an ownership of: 577781420, 627781420, 771738420 on 3/9/2012, 3/14/2012, 3/21/2012 respectively.

**47.** As can be seen from point#46 above,the Plaintiff again exceeded the second number of shares reported as outstanding by the company on 1/17/2012 (point#**38**).On 3/21/2012 the Plaintiff filed a SEC Form 4 showing an ownership of 771,738,420 (pre-reverse split counting) after 64 days from the date where the company reported the 745,634,893 (745,635 post-split counting) outstanding in its 8-k filing of 1/17/2012.

**48.** Despite the fact that the Plaintiff did not sell any shares of his holding (except for the one occurrence descried in point#**44** above) of more than the share outstanding number reported on 1/17/2012 and over double the one reported on 11/17/11 (point#**38**) of shares,this time the market volume was more in the millions than less and reached numbers like 30 and 36 millions (30 and 36 billion of shares in pre-reverse split counting).

**49.** The stock price also moved deeper in the down range to trade at penny a share and even hit lower than that.

**50.** On 4/16/2012 the company filed its annual report for the fiscal year ending 12/31/2011 ("2011 Report") .

**51.** The 2011 Report stated that "as of the date of this Annual Report, we have 100,966,060 post-Reverse Stock Split shares of common stock issued and outstanding".That is an increase of 100,220,425 post-reverse stock split shares or about 13,440.95 percent from the 745,635 post-reverse split shares mentioned in the 8-k filed on 1/17/2012 (point#**38**).

**52.** The 2011 Report also showed,as mentioned in point#**41** above,that the Defendant Dror Svorai and another executive from NexPhase were compensated with 30 million and 20 million post-split shares respectively.

**53.** While,as mentioned in point#**38**,Defendant Onteco Corporation claimed in the SEC filing of 1/17/2012 that the decision of the reverse split was made on 11/2/2011,in the 2011 Report filed on 4/16/2012 it was mentioned

8

that the reverse split was also "declared" on 11/2/2011.

**54.** The 2011 Report also showed that reverse split shares were being issued at pre-reverse split share conversion prices for the conversion of notes.

**55.** The 2011 Report also stated that:

"As of the date of this Annual Report, there are 50,262,282 outstanding shares of our common stock that are restricted securities as that term is defined in Rule 144 under the Securities Act of 1933, as amended (the "Securities Act")".Combining this with the part quoted in point#**51** above would lead that there were 50,703,778 post-reverse split (equivalent to 50,703,778,000 pre-reverse split) unrestricted shares in the open market as of the date of the annual report.This increase came from the selling of restricted shares in the open market before the elapse of the holding period requirement of SEC Rule 144.That is a change of over 13,492.96 percent the number reported by Defendant Onteco Corporation as outstanding shares on 11/17/2011 (point#**38**) within less than five months from that date.The 50,703,778 post-reverse split (equivalent to 50,703,778,000 pre-reverse split) number of unrestricted shares in the open market also represents a change of over 6,800 percent the number reported by Defendant Onteco Corporation as outstanding shares on 1/17/2012 (point#**38**) within less than three months from that date.

**56.** Related to the subject of selling restricted shares in the open market before the elapse of the holding period requirement of SEC Rule 144,Defendant Onteco Corporation continued the part quoted mentioned in point#**55** above, with this part:"Although the Securities Act and Rule 144 place certain prohibitions on the sale of restricted securities, restricted securities may be sold into the public market under certain conditions".Defendant Onteco Corporation did not specify what "certain conditions" were applied that justified the sale of restricted securities in the open market before the elapse of their holding period requirement according to SEC Rule 144 at the level that happened here.

**57.** On 5/21/2012 Defendant Onteco Corporation  filed its quarterly report for its first quarter ending march 31 2012("Q1 2012 Report").

**58.** The Q1 2012 Report showed that the outstanding number of shares increased to 125,722,769 which is equivalent to  125,722,769,000 (125.722769 billion) pre- reverse split shares.

**59.** The Q1 2012 Report also showed new convertible notes were being signed for the reverse split shares at pre-reverse split prices.

**60.** Defendant Onteco Corporation filed with the SEC on 9/10/2012 that on 8/31/2012 Defendant **Jorge Schcolnik** had joined the company as a member of the board of directors,President and Secretary.

**61.** Defendant Onteco Corporation filed in its third quarter report of 2012 that on 8/31/2012 its Board Of Directors had authorized the issuance of 50000000 (50000000000 pre reverse split)restricted common stock shares to Defendant **Jorge Schcolnik** at a price of $0.001 per share.

**62.** Since Defendant Dror Svorai became the CEO,Defendant Onteco Corporation mentioned in its quarterly and annual SEC filings that:

"On January 8, 2010, the Company entered an Executive Employment Agreement effective January 11, 2010 with its Chief Executive Officer. Terms of the agreement include an inception bonus of $150,000 and monthly payments of $15,000. The agreement expires on December 31, 2013.
On November 25, 2010, effective with the change in control, the chief executive officer resigned. The executive compensation agreement remains in effect through December 31, 2013"

To the best of the Plaintiff knowledge no such agreement was mentioned with the former CEO,Defendant **Haim Mayan,** in any filing with the SEC during the entire year of 2010.

### COUNT ONE

### Breach Of Fiduciary Duty

Defendant Dror Svorai and Defendant Jorge Schcolnik (collectively,"Board Defendants") had a fiduciary duty to shareholders which the defendants breached through their intentional misconduct.The Board defendants breached the duty of care with actions that included their dilution of shareholder ownership the way they did.Board Defendants also breached the duty of loyalty to shareholders with actions that included the

compensations they authorized for themselves and/or other executive.

## Count Two

## Securities Fraud

Defendant Onteco Corporation and The Board Defendants undertook very fraudulent activities,lied,misled and filed untruthful and ambiguous or incomplete SEC reports.

A big part of the defrauding actions of Defendant Onteco Corporation and Board Defendants was intentionally intended and directed against the interest of the Plaintiff as a shareholder.Those actions were intended and done for the purpose of taking away the ownership the Plaintiff established in Defendant Onteco Corporation in the open market,and/or the rights that follow from that ownership,and lowering his percentage of that ownership and/or the rights that follow from that ownership.

The actions of the Board Defendants also involved direct self serving fraudulent activities.

Defendant Onteco Corporation with the Board Defendants and Defendant Action Stock Transfer Corporation also violated SEC rule 144 by allowing restricted shares to enter and be sold in the open market before the elapse of the holding period requirement on restricted shares.

The Board Defendants also intentionally tried to entangle or put Defendant Onteco Corporation in a position susceptible to being entangled with debt and fraudulently sold notes convertible to shares at cheap prices to parties they chose.Moreover despite the cheap price,conversion to shares was given as a choice to the parties these notes were sold to.

Defendant,Dror Svorai ,also tried to create an untrue employment agreement for the former CEO, Defendant Haim Mayan.


Wherefore,the Plaintiff is demanding the following

A.Recovery of his ownership percentage and all the rights which follow from that ownership, from the dilutive and potentially dilutive effect of all the common stock shares,preferred shares,convertible notes or any other device,scheme or artifice made or used for the purpose of diluting the

Plaintiff's percentage of ownership or any of the rights that follow from that ownership.

**B.**The Board Defendants should be personally responsible to prevent or resolve all debt defaults that may arise from the defrauding notes and agreements they made without putting any requirement on Defendant Onteco Corporation or its shareholders.

**C.**Cancellation of all fraudulent insider compensations and employment agreements.

**D.**Changing the leadership of Defendant Onteco Corporation to a new one that is not fraudulent and works for the best interest of shareholders.

**E.**Protection from repetition of this fraudulent dilution by Defendant Onteco Corporation through injunctions and/or other legal mechanism(s) sufficient for the purpose.

**F.**All choices and decisions Defendant Onteco Corporation makes should be reasonably convincing in that an outsider would more probably vote for it than against it if that outsider assume,in theory,being a shareholder who cares about his ownership.

**G.**Defendant Onteco Corporation should always keep informing its shareholders at a level that is at least equivalent to the filing requirements of the SEC in details,accuracy and timing.

The Plaintiff is also demanding all additional relief to which the Plaintiff is entitled.

Respectfully submitted,

*[signature]*

Dated: January 15 , 2013

Amir A Kammona,

170 Hillsborough Lane

Lenoir City, TN 37772

phone:(865) 271-1676

Email:FRDPVL@YAHOO.COM

Plaintiff filing Pro Se.